

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

**UNITED STATES OF AMERICA** §
§
**V.** § **CASE NO. 1:12-CR-51**
§
**DAVID R. NEWSOM** §

### FINDINGS OF FACT AND RECOMMENDATION
### ON PETITION REQUESTING REVOCATION OF SUPERVISED RELEASE

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, this matter was referred to the undersigned magistrate judge by the District Court for hearing and the submission of findings of fact and a report and recommendation in accordance with 18 U.S.C. §§ 3401(i) and 3583(e). The United States has alleged that Defendant David Newsom ("defendant" or "Newsom"), violated conditions of supervised release imposed by United States District Judge Marcia A. Crone. The United States filed its *Second Amended Petition for Warrant or Summons for Offender Under Supervision* (doc. #57) requesting the revocation of Defendant's supervised release. The Court conducted a hearing on June 21, 2017, in accordance with Federal Rules of Criminal Procedure 11, 32 and 32.1. Defendant was present and represented by counsel at the hearing.

–1–

## A.  Procedural History

On October 30, 2012, The Honorable Marcia A. Cone, United States District Judge, sentenced the defendant after he pled guilty to the offense of Interstate Transportation of Funds by Fraud, a Class C felony.   Mr. Newsom was sentenced to 30 months imprisonment, to be followed by a three (3) year term of supervised release subject to the standard conditions of release, plus special conditions to include financial disclosure; no new credit; gambling prohibition; employment restrictions; the defendant is prohibited from any involvement in the management and/or oversight of investments or investments accounts, as well as health and/or life insurance policies; while on supervised release, the defendant shall not renew or reapply for a license with the National Association of Security Dealers; $432,765.33 in restitution; and a $100 special assessment. On March 30, 2015, David R. Newsom completed his period of imprisonment and began service of the supervision term.

On December 21, 2015, the Court modified the conditions of supervision to include the defendant shall have no contact with Cheri Leblanc unless granted permission to do so by the probation officer.

## B.  Allegations in Petition:

The United States alleges that Defendant violated the following mandatory and standard conditions of supervised release in the manner alleged below, as stated in the petition:

*The defendant shall not commit another federal state or local crime.*

On December 15, 2015, Mr. Newsom was arrested by Hardin County Sheriff's Department, Kountze, Texas, for assault.  He was fined $300 and given time served.

On May 6, 2016, Mr. Newsom was arrested by Louisiana State Police, Lafayette Parish, for

Driving While Intoxicated; Open Alcohol Container; Careless Operation; and Failure to Wear a Seatbelt.

On June 11, 2017, Mr. Newsom was arrested by Lake Charles Police Department, Lake Charles, Louisiana, for the offense of Domestic Abuse Battery.

*The defendant shall not leave the judicial district without permission of the Court or probation officer.*

The U.S. Probation Office allowed Mr. Newsom to travel outside the Eastern District of Texas, to the Lake Charles, LA, area, only for employment purposes. At the time of his arrest for Driving While Intoxicated, Mr. Newsom was not considered to be working.

Additionally, his arrest on June 11, 2017, for Domestic Abuse Battery, occurred at the Golden Nugget Casino, Lake Charles, Louisiana. The U.S. Probation did not allow Mr. Newsom to travel outside the Eastern District of Texas on the date of this arrest, or to enter the Golden Nugget Casino.

*The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.*

Mr. Newsom failed to refrain from excessive use of alcohol as noted by his arrest for Driving While Intoxicated and Open Alcohol Container. Mr. Newsom submitted a blood sample which exceeded the legal limit of impairment.

*The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.*

The petition alleges that Mr. Newsom failed to notify the U.S. Probation Office within 72

–3–

hours of his arrest or being questioned by law enforcement for the above-mentioned incident.

### C. Evidence presented at Hearing:

At the hearing, the Government offered the following evidence in support of the allegations set out *supra*. The Government called four witnesses to testify live:

Trooper Scott O'Connell with the Louisiana State Police, Troop D, Lake Charles testified for the Government. Trooper O'Connell was the officer in charge of investigating the incident which occurred on May 6, 2016. This accident is the basis of Newsom's arrest for driving while intoxicated (DWI). O'Connell was dispatched to the accident scene at Louisiana Highway 99, about 25 miles east of Lake Charles, Louisiana, and 2 miles north of the 15 mile post of Interstate 10. He testified about the accident scene itself and his subsequent conversation with Newsom at the hospital following the accident. O'Connell testified that he detected a strong smell of alcohol on Newsom's breath and person at that time.

Trooper John Sims with the Louisiana State Police testified that he was dispatched to the hospital to check on David Newsom following the accident on May 6, 2016. At that time he conducted a Horizontal Gaze and Vertical Gaze Nystagmus (HGN and VGN) sobriety test while Mr. Newsom was in his hospital bed. Sims stated that Newsom failed the Horizontal test poorly but passed the Vertical test, indicating that he was impaired and intoxicated on alcohol. Newsom also voluntarily submitted blood for a chemical intoxication test, which Sims sent to the lab for testing. At that time, in the early morning hours of May 6, 2016, Trooper Sims placed Mr. Newsom under arrest for Driving While Intoxicated (DWI).

Cheri LeBlanc, Newsom's ex-wife, also testified. Her testimony focused on a domestic disturbance on December 15, 2015, involving herself and Mr. Newsom. She also discussed their

– 4 –

divorce and ongoing child support and custody issues.

Deputy Randall Erwin with the Hardin County Sheriff's Department also testified. He was dispatched to LeBlanc's and Newsom's residence on December 15, 2015, after Ms. LeBlanc called 911. Deputy Erwin discussed the situation he encountered when he arrived, including Ms. LeBlanc being visibly upset, their young daughter being frightened, and Mr. Newsom's demeanor. Erwin testified that despite Ms. LeBlanc stating that she did not want Mr. Newsom touching her, Erwin observed Newsom touching her on the back in front of the deputy. At that point he arrested Mr. Newsom for a Class C misdemeanor assault based on unwanted touching.

United States Probation Officer (USPO) Derrick Robinson appeared as the Government's final witness. Robinson discussed the history regarding Newsom's term of supervised release. He noted that he was not the original officer assigned to him; USPO Robert White was the officer who did the initial intake on Newsom upon his release from prison. Robinson also stated that he did not begin to supervise Newsom until around May 2016. He did testify that Newsom was never given permission to be in Lake Charles, Louisiana, other than for work purposes. He stated that Newsom did not report his arrest for DWI to Robinson, but Robinson acknowledged that he may not have been the supervising officer at the time. Robinson further discussed Newsom's most recent arrest in Lake Charles at the Golden Nugget Casino on June 11, 2017. He testified that he received notice from law enforcement of Newsom's arrest and he obtained a copy of the offense report. Finally, Robinson stated that Newsom did call and leave a message with Robinson the following week reporting that Newsom did in fact have contact with Lake Charles Police regarding the incident, but Newsom claimed he was not actually arrested, which contradicted other information received by Robinson.

–5–

The Defendant called one witness - his family law attorney, Tommy Peterson. Mr. Peterson discussed the status of the amount of child support owed by Mr. Newsom as a result of his two divorces and his payment status. He also discussed the "step-up" custody arrangement that Newsom has with Ms. LeBlanc, which is designed to increase his visitation opportunities with their young daughter as long as he continues to make his currently scheduled visitations. Finally, Peterson testified about his understanding of Newsom's living arrangement, although no definitive evidence was presented establishing where Newsom was actually living before his latest arrest.

After the conclusion of testimony, the parties made brief arguments relating to the revocation of Mr. Newsom's supervised release and the evidence at issue. They also stated their respective positions on what type of sentence should be imposed, if any, if the Court determines that Mr. Newsom is guilty of violating conditions of his supervised release. The Government requested that if found to be in violation of his supervision conditions, Mr. Newsom be sentenced to nine (9) months imprisonment followed by one (1) year of additional supervision as recommended by the United States Probation Office.

The defendant, in contrast, argued that the Court should either continue him on supervision or modify his conditions to allow him to work to enable him to make payments toward his restitution and child support obligations. Defense counsel also noted important upcoming dates in Newsom's unrelated state court child custody case, arguing that his relationship with and legal rights regarding his young daughter would be negatively and permanently impacted if he is incarcerated. The evidence is set forth in complete detail in the record of the revocation hearing and will be discussed as necessary in reference to the Court's analysis, *infra*.

– 6 –

**D. Findings**

The allegations and supporting evidence presented by the Government warrant revocation of supervised release. *See* 18 U.S.C. § 3583(e)(3). The Court factually finds that the Government established by a preponderance of the evidence that the defendant violated standard and mandatory conditions of his supervised release as follows.

(1) *The defendant shall not commit another federal, state, or local crime*

a. The December 15, 2015, Misdemeanor Assault Charge

The testimony of Ms. LeBlanc and Deputy Erwin support a finding that Mr. Newsom committed the crime of assault by offensive or unwanted contact, a Class C misdemeanor. The applicable provision of the Texas Penal Code provides that "(a) [a] person commits an offense if the person: . . . (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PEN. CODE § 22.01(a)(3) (West 2013). An "offensive contact" assault offense under Subsection (a)(3) is a Class C misdemeanor. *See* TEX. PEN. CODE § 22.01(c)[1].

Section (a)(3) assault does not require proof that the defendant knew or should have reasonably believed the other would perceive the contact as offensive or provocative *See Shultz v. State,* No. 12-15-00427-CR, 2017 WL 2290152, at *9 (Tex. App. – Corpus Christi-Edinburg May 25, 2017, no pet. h.)(mem op.)(citing *McKithan v. State*, 324 S.W.3d 582, 591 (Tex. Crim. App. 2010)); *see also Schoenfeld v. State*, No. 05-03-01447-CR, 2004 WL 2802511, at *2 (Tex.

---

[1]The Texas Legislature recently amended Section 22.01 of the Texas Penal Code to make assault in certain situations, including domestic situations and instances of civil commitment, second and third degree felonies. *See* 2017 TEX. SESS. LAW SERV. CH. 34 (S.B. 1576)(Vernon's 2017). However, the Court cites the version of Section 22.01 in effect in December 2015 when Mr. Newsom was arrested for assault.

–7–

App.—Dallas Nov. 30, 2004, pet. ref'd).  Courts have held that the portion of the Texas definition of assault found at Section 22.01(a)(3) is identical to the Texas definition of battery, which is when the defendant "intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative." *Hutchison v. Brookshire Bros., Ltd.*, 284 F. Supp. 2d 459, 474-75 (E.D. Tex. 2003)(Schell, J.)(citing TEX. PEN. CODE § 22.01(a)(3) and *Bailey v. C.S.*, 12 S.W.3d 159, 162 (Tex. App. – Dallas 2000, no pet.)).  Under Section 22.01(a)(3), neither injury nor apprehension of injury are necessary to state a successful claim, yet a defendant must cause an actual physical contact to be liable.  *Id.*  Citing *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App. – Houston 1999, pet. denied).

The testimony presented by both Ms. LeBlanc and Deputy Erwin sufficiently establishes that Newsom's conduct on December 15, 2015, was offensive contact constituting a Class C misdemeanor assault within the meaning of Section 22.01(a)(3).  Ms. LeBlanc testified that she repeatedly told Newsom not to touch her and, when he continued to do so, she called 911.  Deputy Erwin stated that when he arrived, she appeared visibly upset and was crying and in Erwin's presence she verbally repeated "no" and pulled away when Newsom attempted to touch her. LeBlanc's rebuffs would sufficiently put a reasonable person on notice that any touching would have been offensive to her.  Despite this, Newsom reached out and touched Ms. LeBlanc's back as observed by Erwin.  Erwin further testified that Newsom's demeanor was aggressive and taunting in nature.  Based on this context, Erwin arrested Newsom.   The preponderance of the evidence clearly supports a finding that Newsom intentionally reached out and touched LeBlanc's back even in light of the obvious indication that any such conduct would be offensive to LeBlanc.  The evidence indicates that Newsom eventually pled no contest to the assault charge and paid a $300

fine.  The ultimate disposition has no bearing on the Court's finding for purposes of this revocation hearing given that the standard here is merely a preponderance threshold.  The evidence presented by the Government relating to the December 15, 2015, incident meets this standard.

The defendant also argued about the reasonableness of a man reaching out to rub his wife's back equating assault.  The applicable provision of the Penal Code, however, provides that any touching - regardless of how harmless or casual that physical contact may objectively appear, and regardless of whether it occurs between spouses - can constitute an assault in the context of an offensive contact.

b.  The May 6, 2016, DWI

Both Trooper O'Connell and Trooper Sims testified that in the early morning hours following the May 6, 2016, accident, Newsom appeared intoxicated, as exhibited by slurred speech, the HGN test results, and the smell of alcohol on Newsom's breath and person.  The testimony also indicated that Newsom admitted to drinking three (3) mixed drinks prior to the accident and an almost empty liquor bottle was found at the scene.

In Louisiana (where the accident occurred and the charges were filed), "(t)he crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when: (a) The operator is under the influence of alcoholic beverages; or (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood[.]" *State v. Marlborough*, 13-KA-688 (La. App. 5 Cir. 3/12/14); 138 So. 3d 65, 71(quoting Louisiana Revised Statute 14.98).  In order to convict an accused of driving while intoxicated, the prosecution must prove that the defendant was operating a vehicle and was under the influence of alcohol or drugs. *Id.* at 71-72.  (Citing *State v. Cowden*, 04–707 (La. App. 5 Cir. 11/30/04); 889 So.

2d 1075, 1082 *writ denied,* 04–3201 (La.4/8/05)).

It is undisputed that Mr. Newsom was driving the vehicle involved in the one-car accident at issue on May 6, 2016.   The testimony of two Louisiana State Troopers established that Mr. Newsom was under the influence of alcohol.   The defense argued that his incoherency could be attributed to injuries sustained in the accident and that the HGN was unreliable given that Newsom was only partially elevated in a hospital bed when Trooper Sims conducted the test. The defendant also pointed out that the DWI charge has not resulted in a conviction to date but is still pending in Louisiana, according to evidence presented at the revocation hearing.   These points of contention may be sufficient to create reasonable doubt regarding Newsom's intoxication status, but  the evidence presented and the circumstances taken in total certainly rise to a preponderance level to support a finding that Newsom was in fact intoxicated from alcohol consumption when he wrecked the vehicle he was driving on May 6, 2016.  *See United States v.  Clifton*, 604 F. App'x 341, 342 (5th Cir. 2015)(per curiam)("Revocation of supervised release does not require proof sufficient to sustain a criminal conviction.... Instead, "[a]ll that is required is enough evidence, within a sound judicial discretion," to satisfy the district court that the defendant has violated the terms of his supervised release.")(quoting *United States v. Spraglin*, 418 F.3d 479, 481 (5th Cir. 2005)); *see also United States v. Cawthorne*, 226 F.3d 641, 2000 WL 1028980, at *2 (5th Cir. 2000)(discussing preponderance burden and lessened evidentiary restrictions in a revocation hearing; noting that the preponderance of the evidence standard requires establishing that the violation occurred "more likely than not.").

c.    The June 11, 2017, Domestic Abuse Arrest

The Government did not present sufficient evidence in support of this latest charge against

Mr. Newsom.  Accordingly, the Court cannot find that he violated his supervision by being arrested on June 11, 2017.

> (2)    *The defendant shall not leave the judicial district without permission of the Court or probation officer.*

USPO Robinson testified that Mr. Newsom did receive permission from the probation office to travel outside of the Eastern District of Texas to the Western District of Louisiana for employment purposes.  Robinson also testified that Newsom did not have permission to be in Lake Charles in the early morning hours of May 6, 2016, when he was arrested for the DWI.  However, Robinson did testify that during this time period, supervision duties over Mr. Newsom's case were transferred from USPO White to Robinson.  It follows that Newsom could have received permission from his other probation officer to be in Louisiana on May 6, 2016.  Evidence presented also suggested that Newsom was giving a co-worker a ride home from a work function when the accident occurred.  For these reasons, the Court cannot conclusively determine by a preponderance of the evidence that Newsom traveled to Louisiana on this date without permission.  Further, as noted above, almost no evidence was presented to support the alleged incidents of June 11, 2017, at the Golden Nugget in Lake Charles.  The Court accordingly cannot find that Mr. Newsom was impermissibly in Louisiana at that time based solely on the evidence presented at the hearing, despite Robinson's testimony that Newsom did not have permission to be there.

> (3)    *The defendant shall refrain from the excessive use of alcohol.*

Based on the Court's recitation of Trooper O'Connell's and Trooper Sims' testimony above, the undersigned further concludes that the evidence supports a finding that Mr. Newsom used alcohol in excess in violation of his supervision conditions.  The same evidence supporting an

finding of intoxication for DWI purposes establishes that Newsom violated in this manner as well.

> (4)    *The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.*

USPO Robinson testified that the defendant never notified him about the May 6, 2016, DWI arrest.  At the same time, he did also explain that during this time period around May 2016, Newsom's supervision was being reassigned from one probation officer to another.  Accordingly, the Government cannot establish by a preponderance of the evidence that Newsom failed to properly report his arrest to probation, given that Robinson may not have been the designated supervising officer at the time.

As for the recent June 11, 2017, arrest, Robinson stated that Mr. Newsom did call and leave a message within a few days disclosing that he had encountered the Lake Charles Police Department. Robinson testified that Mr. Newsom was only partially honest in the voicemail because he did not disclose the arrest.  In any event, this does not meet the required level of proof to establish that Newsom violated this particular condition because there was no affirmative first-hand evidence that Newsom was in fact arrested on June 11, 2017.  Furthermore, the applicable condition of Newsom's supervision states that the defendant is required to notify Probation about "being arrested *or* questioned by a law enforcement officer."  If Newsom was untruthful with Robinson about an actual arrest versus merely encountering law enforcement, that would constitute a violation of a separate condition of supervision - the standard condition requiring truthfulness with the probation officer. The Second Amended Petition does not specifically allege a violation of this condition.  For these reasons, the Government failed to establish that Mr. Newsom violated this particular condition by a preponderance of the evidence.

### E.   Applicable Law, Sentencing Guidelines, and Recommendation

Having found by a preponderance of the evidence that Mr. Newsom violated two conditions of his supervision by committing new state crimes and using alcohol in excess, the Court now turns to the consequences for these violations.  Both of the new crime violations and the excessive use of alcohol constitute Grace C violations under U.S.S.G. § 7B1.1(a).  Upon finding a Grade C violation, the Court may revoke the defendant's supervised release, or modify or extend the current term of supervision.  *See* U.S.S.G. § 7B1.3(a)(2).  Based upon the defendant's criminal history category of I and the Grade C violation, the Sentencing Guidelines suggest a sentence of imprisonment for a period ranging from 3 to 9 months.  *See* U.S.S.G. § 7B1.4(a).

The Court may take into consideration factors including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the need to provide restitution to any victims to the offense.  *See* 18 U.S.C. §§ 3583(e); 3553(a).  The Fifth Circuit also states that Chapter 7 of the Sentencing Guidelines regarding the revocation of supervised release is advisory only.  *See United States v. Cade*, 279 F.3d 265, 271 n.2 (5th Cir. 2002) (Citing *United States* v. *Montez*, 952 F.2d 854, 859 (5th Cir. 1992); *United States v. Headrick*, 963 F.2d 777, 782 (5th Cir. 1992)).  Because Chapter 7 was promulgated as an advisory policy statement and there are no applicable guidelines for sentencing after revocation of supervised release[2], the Court may impose a greater or lesser sentence upon revocation. *United States v. Gonzalez*, 250 F.3d 923, 925 (5th Cir. 2001).  Further, a sentence imposed for revocation will be upheld unless it is in violation of the law or plainly unreasonable.  *Id.  See also United States v. Pena*, 125 F.3d 285, 288

---

[2] *See U.S. Sentencing Guidelines Manual*, Ch. 7, pt. A, cmt. 1 ("At this time, the Commission has chosen to promulgate policy statements only.")

-13-

(5th Cir. 1997)(Citations omitted).

As stated above, the Court finds that Mr. Newsom committed at least three Grade C violations of his supervision conditions. Since he has been on supervision, he has been arrested three (3) times. He apparently has little regard for the directives of his probation officer or the Court given that he may have continued to violate terms of his supervision even in the face of a possible revocation while he was released awaiting his final revocation hearing. His apparent lack of respect for authority and lack of concern for the gravity of his situation lead this Court to conclude that a mere modification or an extension of his supervision will not curb his behavior. Newsom has shown little indication that he will stop skirting the conditions of his court-ordered supervision if he is remains released on supervision. The evidence presented convinces undersigned that Newsom will simply continue to violate conditions and encounter law enforcement, or, at a minimum, engage in suspect behavior and deny responsibility for his actions, which only hurts his family and those around him.

This Court therefore finds that, based on the evidence presented and the totality of the circumstances, the District Court should impose the sentence of imprisonment at the high end of the Guideline range as recommended by the United States Probation Office. The Court accordingly recommends that the District Court revoke Defendant's term of supervised release and sentence Defendant to a term of **nine (9) months imprisonment, to be followed by another one (1) year term of supervised release**, subject to the same conditions imposed in the original judgment of conviction and including the imposition of the remaining restitution owed by Newsom.

### F.    Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14)

days after being served with a copy of this report.   *See* 28 U.S.C. § 636(b)(1).

A party's failure to object bars that party from:  (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n*., 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).  The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate judge's report and recommendation.  *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 26th day of June, 2017.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE